Case number 231711 and 231713. Timothy Hall v. Blake Navarre et al. Argument not to exceed 15 minutes per side. Mr. Klikulik, you may proceed. Good morning. Good morning. May it please the court, I'm Matthew Klikulik on behalf of the plaintiff, Timothy Hall. These are two, I'd like to reserve three minutes for rebuttal, please. There are two consolidated appeals here. I would address the lowest numbered appeal first, which is... You can just do the whole thing together, we'll be fine. Sure, I will. Which is the trial court's grant of summary judgment of Armonell claim, which we believe to be an error. There's extensive briefing in this case, I'm sure you're familiar with it, so I'd like to just hop around to what I think are pertinent points for the court. First of all, the defendant, City of Detroit, failed to argue in the trial court that Detroit Police Chief Craig was not a final policymaker with respect to the officer's conduct at the protest for purposes of Plaintiff's Manell claim. And failure to raise an argument in the trial court results in waiver of that argument on appeal. We made that argument that he was a final policymaker in our response, and the trial court found that as much, and only in... The policy is with regard to his directing his officers to engage the protesters on the day in question. You need more than just an isolated incident to establish a policy, don't you? Well, I believe under the Penn-Bauer decision, which is 475 U.S. 469, that individual courses of action can be directed by individual government entities, and that can be a policy. It can be, but tell me what the policy is. I mean, we've got Craig directing them here, but what is the overriding policy that Craig is implementing? Otherwise, every decision becomes policy. Well, there had been extensive protests throughout that summer related to protesting police misconduct and excessive force as a result of the murder of George Floyd. They had been dealing with these protests and protesters in the streets all that summer, and the policy was when the police chief directed his officers to break their line and rush in and seize protesters, often in the exercise of excessive force, who they perceived to be agitators. And viewing that in the lightness of the movement, I think it's clear that the chief of police's order was dictating officers' conduct in response to the protesters as an act of official government policy. Help us figure out the policy and then in connection with what happened. I mean, tell me what I'm missing when I think of it as people in a street, the officers have decided we're going to clear the street, you have to get to the sidewalk, people are moving, they start saying we're going to have to arrest people. Let's call that the policy. I'm just not sure that's accurate, but we'll just call that the policy. How is that a violation of the Fourth Amendment? When it is that the police chief is directing the officers to break their line and engage and break up the protesters who are exercising their free speech rights. You're not allowed to move them to a place where they can still speak? They can still speak from the sidewalk. I'm just suggesting, Your Honor, that them physically engaging the protesters, his call to do that at that time and throughout the summer with regard to these protesters was his exercising official government policy. His final decision making that then goes down the line of authority and is executed by the individual officers. What's your best case? If I go read the case, I'll realize that yes, this is a way you can describe a policy. It's okay that it's kind of just one officer doing this. It's your favorite one. If I read it, I'll realize everything is true about what you're saying. The Penn Bar decision that I cited, which is 475 U.S. at 469, generally in the area of pages 479 through 484, there's a specific quote that I think is very helpful at page 481, which is that in Owen and Newport, as in Owen and Newport, a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decision makers, it surely represents an act of government policy as that term is commonly understood. Okay, thank you. Thank you. I believe that the district court erred in granting summary judgment of our Monell claim because there is a question of material fact as to causation here. But for Chief Craig issuing the initiating order to engage, Defendant Navar would not have targeted and taken down the plaintiff, violating his constitutional rights. Chief Craig is not required to give the order to Navar personally, as defendants have argued. It went down the chain of command, and per his training, Navar's actions directly, proximately, and foreseeably flowed from Chief Craig's order to engage. But the order to engage was, I mean, it's okay to engage protesters if they're obstructing roads and doing different things. There's nothing targeted about your client specifically, like go after him and punish him specifically, right? It was just a general order to engage with the protest that was in the street. It was in the context of this protest as there had been protests throughout the summer and as they had been engaging the protesters throughout the summer. And as Navar's commanding officer, Sergeant Shramick, testified, everybody that was on the arrest team, which included Defendant Navar, was tasked with grabbing people and dragging them back, and their trigger to do so was receiving that instruction from the chief. Sergeant Shramick does not testify that Navar... Instruction was to engage. Instruction was to engage. And those actions then flowed from it as they had throughout the summer, that they would then break up the protest physically, pull apart the protesters, take them off the scene, arrest them, and so on. There are many similarly situated protesters that received similar unconstitutional treatment following Craig's initiating order. I attached, or he attached, two different, I'm sorry, declarations of other individuals who were subject to excessive force and first-amend retaliation, and then there were 44 others charged with identical crimes on the day as Timothy Hall. And so you can look to that as modus operandi, and circumstantial evidence establishing the existence of a discriminatory atmosphere in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff specifically. And that's the Ercegovich decision. Did you want to talk a little bit about, you know, the claims against individual officers? Sure, I can move on to that if you'd like, Your Honor. I was going to address the issue about how we were only given less than a month to conduct our discovery in the Minnell claim, so that was an additional basis for which the court erred in granting summary judgment because it's premature. We saw that in the brief. Thank you. In regard to the scheduling order, you never requested an extension of it? You knew that the scheduling order was in place once the case was consolidated, did you not? There was a scheduling order as to the first filed case, which is as to the individual officers, and then once the case was consolidated, there was a notice that was issued. There was a notice that the scheduling order shall apply, and you knew that you actually had almost two months for discovery, but you never moved to extend it, right? Well, Your Honor, we had less than a month after the defendant, City of Detroit, finally answered the complaint, which was on October 10th, and then the discovery cutoff, I believe, was November 4th. So that was just a notice that was filed months before the actual answer was entered, and that was as to the earlier case with regard to the individual actors. Rule 16 indicates that a district judge must enter a scheduling order, and with regard to Rule 42 consolidation, the cases retain their individual characters, as is also part of our argument for why this court has subject matter jurisdiction over the separate Monell appeal. You had time for discovery in the other cases. Cases are related, as you say. You wanted to bring them as one case at one point, remember? You weren't allowed to, and then you were able to do it again. So you have all this time for discovery. The discovery deadline expires with three months. Ask for more time. I mean, you should have done that before the discovery deadline expired, but three months seems like an awfully long time. This is a pretty deferential standard review, I think. I understand your point, Your Honor. My point is simply that discover really never formally opened in this case because there was no actual conference or scheduling order entered with regard to the Monell claim. We, because of the procedural ambiguity that was created in the consolidation, we nonetheless did engage in discovery, and the defendant cooperated in that up until they filed their motion for summary judgment, whereupon the realization of trial counsel was, well, wait a minute. We still need to do other discovery. What happened here? We filed the motion to extend the discovery, and we received. Okay. Am I wrong, or did the district court enter an entry on August 15th that says, Notice to the parties regarding consolidated case. All original deadlines and hearings remain in effect unless otherwise notified by the judge's chambers. Is that correct? I acknowledge that notice, Your Honor. I don't believe that. That's August 15th. I mean, that couldn't be any clearer, could it? That the scheduling order is in effect for the consolidated case, and all deadlines are in effect, and you say, I'm surprised we only had a month and a half for discovery. I just don't. Our argument, Your Honor, is that the court must enter a scheduling order pursuant to Rule 16 and did not do that with regard to the separate Minnell case. And given the circumstances and how the litigation played out, we were effectively only given less than a month's time to do that discovery, and that in light of those circumstances, we applied for the extension and explained the circumstances, and the court certainly had the discretion to do that, and I believe abused its discretion in light of her failure to take control of the scheduling of the case and have a scheduling conference with regard to the new case with a new claim as to a new defendant. I don't want to beat a dead horse. Obviously, I understand your skepticism with regard to the argument, but I do believe that that was an additional basis. We've got a little bit of time left in your opening argument, so if there's anything else. Yes, Your Honor. As we argued in response to Defendant Barr's briefing, the collective knowledge doctrine does not apply here because none of the instructing officers had probable cause. The thing that's tricky about this is, I mean, I get your side of it, the individualized point, and that that's the assumption, but you do have to feel a little bit for the officers when they're dealing with a crowd. I mean, it does seem hard to imagine a world in which, you know, one officer can be directing things and saying, move to the side. If you don't move to the side, you're going to be arrested and so forth, and then say, okay, that's the group that didn't move to the side. Group, I get it, not individuals. And then it just seems odd to say the junior person or someone horizontally the same level can't follow that order, particularly with someone who is clearly dressed for the occasion. I mean, this wasn't just someone who just happened to be caught up on the sidewalk. They clearly were there for that protest, so I don't know. It just seems very hard to implement your theory. By your argument that, well, he was dressed for the occasion, that kind of feeds into the fact that, well, he was there, and so therefore I'm entitled to charge him with these offenses regardless of whether he committed them or not, which amounts to – Was he not in the street? He was not in the street, as you can see from the video. No, no, no, no. He was never protesting in the street. Is that your point? There's no evidence of that in this case that I'm aware of. The video clearly shows that he was standing on the sidewalk when the officers were instructed to engage and Officer Navarre blindsidedly tackled him to the street and then zip-tied and dragged him to a curb. I'm not focused on the tackle point because that's not in front of us, right? I'm sorry, Your Honor. The tackle point is not in front of us. No, Your Honor. Okay, so I'm just focused on what do you do with someone in a group? That's the thing I'm struggling with, which is hard for me in this case. I agree with you it tackles excessive force. That's not my point. My point is what do you do when someone says, this group of people refused to follow the order to get out of the street, we physically moved them to the sidewalk, and then they say we need to issue arrests and so forth? Well, Your Honor, the basis that they're saying is under the collective knowledge doctrine, which does not apply here. And likewise, the good faith extension of that collective knowledge doctrine should not apply here in the context of a personality retaliation case. You say collective knowledge doesn't apply. What do you mean by that in terms of answering the questions I've raised so far? The officer, Barr, who issued the tickets for disobeying, for failure to follow lawful order, for blockading traffic, he had no basis on which to issue those orders other than Lieutenant Coles saying ticket these people. Barr was initially on the scene, right? Yes. Barr saw there were massive protests in the street. Yes. And he knew a large group of people were in the street protesting. He did. They were told to leave. At a minimum, the people in the street were told to leave, right? Correct. They were told to exit and be on the sidewalk where my client was. But some people didn't do that. Some people did not do that. So there's a big group of people. A number of them are on the street. Barr sees all this. He knows a bunch of people on the street illegally ignoring an order from the police. Correct. And then he later is at the station, and he knows that Hall was out as part of this group. He knows that he was picked up at the protest. He does not know what he was doing that caused him to be picked up. There was no probable cause by any of the officers that interacted with him up to the point of Barr for him to rely on. Barr knows there's this big group of people. It's hard to distinguish sometimes between who's in the group. He knows that people are ignoring the officer's order at the protest on the street, and then later on, there's a bunch of people coming in ready to get ticketed for that information or that conduct, and Hall's in that stream of people. And your distinction is, well, he was on the sidewalk. Not on the street, I think. But how is Barr supposed to know the difference? Having clearly seen illegal conduct for a large group of people, how is he supposed to then distinguish that Hall, who's not even in front of him, is the one who you say wasn't on the street? I don't think that he can know, and he therefore can't issue those tickets. He can't simply blindly follow orders to ticket these people. But that's going to be true in every one of these settings. That's the thing I'm trying to come to grips with. So maybe the answer is, so be it. If you want to arrest everyone, you've got to have an officer per person or an officer per five. But that's what I'm trying to figure out. It is a reasonableness test. And so reasonableness would contemplate paying attention to the realities of a situation with lots of protesters. Is the best answer that's a jury question? I absolutely agree that it's a jury question. You know, they want us to rule as a matter of law that he acted reasonably, but that's not normally what we do. Reasonableness is usually a trier fact, right? Correct. And throughout their arguments, defense. Your position is the only evidence is that he was on the sidewalk and it was lawful for him to be on the sidewalk? That's correct, Your Honor. At least this is his position at this point. So he did not disobey any of the orders to get off the street that, you know, that he was lawful where he was.  At least that's what it is. But, sir, what's the clearly established law on that point? So let's agree with you and Judge Griffin's point that it is a jury question on reasonableness. But you still have prong two. So what's the clearly established case law that says, no, you can't do this based on collective knowledge, and the officer should have known that? Your Honor, I believe I addressed the argument that it's clearly established. What's the one case that's in this setting that says, no, you can't. You've got to have an officer say, I saw him here or there, and therefore it was okay to act on the superior's orders to issue tickets. Well, I think it's the general law that a plaintiff's first amendment right not to be subject to retaliatory arrest and charged with crimes in the absence of probable cause, which is firmly established under the city of Houston v. Hill, which is 482 U.S. 451, as well as McCurdy v. Montgomery County, which is 240 F3rd 512. You're going to have rebuttal. If you think of something that's a fact pattern like this one, at least speaking for me, that would be very helpful to your case on this issue. But a fact pattern like this one, that's all I'm saying. So why don't we hear from the other side, and you'll get your full rebuttal. Thank you. Good morning. May it please the court. Gregory Patterson on behalf of Appalachia City of Detroit and appellant Timothy Barr. Based on the court's question, I got a pretty good feeling that you all understand what arguments we would make regarding the Monel claim. Why don't we go to this last one, which at least for me is a tricky one. And, you know, on the one hand it seems quite right that there seems to be a problem with officers issuing tickets when they can't actually prove, let's take this exact person, that they weren't on the sidewalk the whole time, right? I mean, you would agree, if they were on the sidewalk the whole time, it starts to look like a good free speech retaliation claim. Because, gee, you're just upset that they're here, but even though they were following lawful orders. So can you really just get around this by saying, you know, what else are we going to do? It's 100 people or it's 50 people, and therefore you can do it on a group basis. To be clear, the argument here is not that Mr. Hall was not retaliated against. The argument here is that he was not retaliated against by Sergeant Barr, and he wasn't retaliated against by virtuous city policy. In fact, let's forget city policy. Let's just focus on the individual officer claim. Who was he retaliated against that night? The suggestion would be that it was an issue between Officer Navar and Mr. Hall. And it stemmed from issues that occurred prior to this protest, in which Mr. Navar's partner had his neck broken when a traffic cone that was thrown by a group that- That's not- I understand. That's not First Amendment retaliation. That's just like, I don't like this person. Correct. I thought the claim was their speech. Okay, I thought you were conceding First Amendment retaliation. I'm sorry. No, no, no, and I'm not here to argue, I do not represent Officer Navar, that there may not be a First Amendment retaliation claim against him. But the suggestion that it applies to Sergeant Barr is where we're at now, and I think, Chief Judge, you make a good point. We, in the city of Detroit, dealt with 100 consecutive days of protests. Which point did you think was good? Because one of them hurt you. Well, the point to the fact that we have a situation, a mass protest, and the suggestion that in order to effectively monitor or differentiate between those protesters who are properly exercising their First Amendment rights with those who are engaging in destructive or combative behavior, that requires the use of the collective knowledge for officers to communicate. To simply determine that that does not extend to these situations simply because it happens in a First Amendment context is not clearly established. Well, no, I think they almost concede that you can use the collective knowledge of the officers, but they argue that there are no officers at all that had evidence that the plaintiff was doing anything illegal. And that may be the case, but that's why the good faith exception to the collective knowledge doctrine is so important as it relates to Sergeant Barr. And it's important to note also that in the— All right, isn't that issue a fact then? No, no. They have to—it's their burden to show that issuing the ticket was in retaliation for his exercise of the First Amendment. Your position, no. They issued the ticket on the mistaken belief that he actually was disobeying orders and that this was a reasonable belief. Well, I mean, that's an issue for the trier effect, isn't it? No, Your Honor, and it's actually because the court determined that. The lower court actually found, specifically, it was in the analysis of the Fourth Amendment claims, and if I recall, it was page 26 of the opinion. The court held that it was objectively reasonable for Sergeant Barr to rely on the communication from Lieutenant Cole of the direction to issue these tickets. Yeah. The court already held that in the Fourth Amendment context. But you have to assume they're right when they say he was never in the street. Correct. So now what happens at that point? We're just going to say, so be it, close enough for government work. It may have been a mistake, but we're not going to—I don't know. We have to assume he's right, that he was on the sidewalk the whole time. So he gets wrapped up into this collective knowledge order. How do you deal with this? But I want to reaffirm that this discussion is not dealing with Officer Navarro, who was the arresting officer at the point of origin. This is dealing with Sergeant Barr, who was there, whose task was simply to keep side streets closed. When the protests dissipated, he went to Lieutenant Cole, hey, is there anything I can do to help out? Lieutenant Cole said, yeah, I could use some help issuing tickets. Sergeant Barr travels to— That's what we're assuming. Tell me why—keep going, but I'm not sure why that's responding to what I just said. Right, because obviously under the collective knowledge doctrine, even if the point of origin of Officer Navarro's arrest was improper, Sergeant Barr has nonetheless—unless he has knowledge that that was a false arrest, unless he has knowledge that there was no probable cause, which clearly he didn't, then he is entitled to rely on the fact that, okay, this individual amongst a large group of protesters who were behaving unlawfully was arrested. He is then entitled under the collective knowledge doctrine to say, okay, because they don't have any reason to doubt it, which is also what the court found, that I don't have—I can move forward and issue these tickets. Because I was just following officer's orders, my superior's orders. That's the idea. And I'm concerned about the choice of language the court's using, because it sounds very familiar to plaintiff's brief, but noting that that was referencing the Thaddeus X case, and what's important about that case is that the suggestion by the court in Thaddeus was that you can't just use the I was just following orders defense, but it predicated that on the fact that that means—that applies where there is a reason for the officer who is receiving the information to think that the orders he's being given are unlawful. In this case, that doesn't exist. Well, I mean, isn't it when you have an order that, all right, ticket everybody in the seat, at the seat. Everybody here gets a ticket, gets charged, irrespective of whether they did anything wrong or not. Because they're in the area, we're going to charge everybody. I mean, that gives you a little pause, or should give you a little bit of pause. Oh, certainly it would if that had happened. Well, that's kind of what they said. Isn't that what Craig said? Ticket everybody. Everybody we got here. No. And understanding the procedural history, initially the Occupy Woodward protests went on where they blocked Woodward Avenue, and I believe all three of you are familiar with Woodward and the city of Detroit. It's a major thoroughfare. They allowed them to protest for a period. It grew, and it grew, and it grew. And eventually at that point, they declared it an unlawful assembly and gave the protesters an opportunity to disperse. Does the record show what the number was at that point? I tried to find the exact number, and I could not. I know that it numbered well into the hundreds, but I could not find an exact count. I don't believe they were taking a tab at the door. Okay, is it an unlawful assembly to be walking on the sidewalk when somebody else is protesting in the street? I mean, people are the bystanders. I mean, it's hard to say this guy's a bystander when he's got a gas mask and all the other stuff out there. But if you did have a bystander who just happens to be strolling along the sidewalk at Woodward and they say arrest everybody in the area, including the bystanders, I mean, you'd have a problem with that, wouldn't you? Correct unless, and this is the caveat, had it been declared an unlawful assembly. Had the bystander been on the sidewalk and just observing the protest, just watching it, there is absolutely nothing illegal about that. However, at the point where now it becomes a concern, a legitimate concern, the city's police powers say, okay, this has gone from an expression of a First Amendment right to a potential riot. Okay, at that point, it's declared an unlawful assembly. The citizens, both the protesters in the street, the protesters on the sidewalk, the neutral observers, everyone, they're given a chance to leave. And the court acknowledged that they were given several opportunities to leave. Okay, now at that point, if that person wasn't involved in the protest but still was refusing to leave, I would say that there would at a minimum be probable cause for them to be cited on the basis that we gave them an opportunity to leave because we're concerned about the city going from a protest to a riot. Because that did occur on certain occasions. If you watch the video, the people being arrested were mostly, people being engaged were mostly in the street. Correct. And it just happened that Hall, he was the only one on the sidewalk, it looked like, who was engaged with because he knew Navarro. So, I mean, watching the video, there were a large number of people who were not leaving, who were in the street. Correct. Who were being engaged with, arrested. Who were certainly focused, correct. Yeah, and Hall, I didn't think it was in order to arrest everybody in the city of Detroit. Correct. Or I thought it was, I mean, the efforts if you watch the video, it's like getting people who are on the street, blocking the road. Right. And it just happened with one guy on the sidewalk, the new officer had a history with him, who got tackled and got swept into this large group. Right. When the order to engage the protesters came, the Senate was, those that were creating blockades, that were stacking trash, creating roadblocks on roadways, those became the individuals whom the mobile field force as a whole targeted primarily. What officer Navarro's personal motivation is for going for Mr. Hall, that's a separate discussion. But the point of it is, is that one, that also works in favor of the city on the Monell claim that, look, the majority of the officers went to the people in the street. What's going on between this one officer and this one individual is something completely separate. And second, can I just, I'm sorry, just before you go to Monell, I'm just trying to make sure I'm, I think this is a clueless question. You're free to just say something along those lines. It is. But just help me understand, if the claim against Navarro survived, that's not in front of us. And in addition, Hall has a claim against Barr for this illegal ticketing, First Amendment retaliation. Is there a meaningful difference? In other words, I know this is a good, better question probably for plaintiff, but does it really matter in terms of damages? It would make a difference, would it? Absolutely, it does. Okay, go ahead. Absolutely, because first and foremost, there's a divide here. And on the damages issue specifically, and this was addressed. So just assume Hall wins against Navarro. Okay, now what is left? The city's not indemnified. Yes, the city council voted not to represent and indemnify Officer Navarro, pursuant to the contract between the city and the mayor. I see, so he could be bankrupt and et cetera. Well, I don't believe you can discharge a constitutional claim through bankruptcy, but that is certainly the concern. I don't want to take too much time on this. I got it, okay. It was a clueless question, thank you. I did address that at the very onset of the case, because under the DPU agreement, we pay for outside council to represent Navarro. Yeah. I said, look, I can get you something and sell it to city council as we're going to have to pay money somewhere. Why not try and get rid of it? That did not resolve the case.  The real issue, though, with Sergeant Barr here is that, again, and to your question, to your point about the fact that the majority of the mobile field force went and pursued the protesters who were in the street engaging unlawfully, well, understand that they are outnumbered, you know, several, three, four, five to one in many cases. So the objective is get them into custody, bring them back, we seat them over here, they transport them away, and then other officers take it. It's simply a lack of resources. Is that the best answer? Probably not. Is it a reasonable one? Absolutely, and courts in the district court, circuit court, throughout the country in examining these protests have found as such. See, that's a good argument to the jury, and I think you've got a good, you know, good position to argue the jury that what we did was all reasonable. Yeah, but we normally just don't rule on issues of reasonableness on appeal as a matter of law, and that's kind of what you're asking us. Right, but the issue is that the district court actually already ruled that it was reasonable, which is actually one of the bases of this appeal, is in analyzing the Fourth Amendment claim, the district court said, well, again, page 26 of the opinion, the district court wrote, a reasonable officer in Sergeant Barr's shoes was entitled to rely on the information he received from a lieutenant call, especially because there was no reason for him to doubt it. Okay, so that, in that reading, the court said, okay, even though this may have been a bad arrest, the good faith extension of the collective knowledge doctrine allowed Sergeant Barr to rely on that information, even if it was in error. The problem is the court failed to apply that same reasoning, the exact same reasoning to the First Amendment context. Now, there were a couple other issues I'd like to address very quickly. First and foremost, with respect to causation, obviously the Neves case provides that a retaliatory motive has to be a but-for cause, meaning that except for the retaliatory motive, the adverse action would not have taken place. And in this case, as it relates to Sergeant Barr, the adverse action is, of course, the writing of the ticket. But there's, that does not apply when the adverse action was going to occur. And according, and except in the court's version of the fact, or the court's finding of fact, we know that it was Officer Navar who arrested Mr. Hall. But if you read the case law, it suggests that it was Lieutenant Cole that made the decision to issue these tickets. Again, Sergeant Barr approached him, anything I can do to help, Lieutenant Cole, yes, I could use your help issuing these tickets. The decision had already been made to issue Mr. Hall the citation. So regardless of whether Sergeant Barr was involved in that process, regardless of whether or not he volunteered to help, so, or regardless of his alleged retaliatory motive or animus, this ticket was still getting issued. Secondly, the Neves Court drew out this exception where even if there is probable cause of retaliation claim. Is this the following the orders defense again that you said you weren't going to use? No, the following orders. The following orders are going to be implemented anyway, whether Barr does it or not. Is that the? Right, and the court noted, and that's obviously the Thaddeus X case, and the court noted that it was reasonable for Barr to do that. And that, I can't just say I'm following orders defense. Well, that's kind of what you are. That exception only applies where there is a reason to believe that the instruction or the order is unlawful. And there's been no reference or no explanation as to how that instruction as to Sergeant Barr was unlawful or how he was supposed to know or should have known that it was unlawful. There's been no discussion of that. I see that my time is up. I do have an opportunity to discuss Monell unless the court has any more questions. We're good, thank you. Thank you very much. Thank you. Your Honors, defendant Barr issued tickets to Hall for merely being present at the protests. And he did so in part, the court found, based upon him seeing protesters engaging collectively in such conduct. And so therefore, he thought it was okay for them to then charge Barr with that conduct for merely being at the protest like those other protesters that he saw engaged in that criminal conduct. And that is, that makes out a First Amendment retaliation claim. I understand there was speech involved. There's no direct evidence that there was any animus towards the message. Not that there necessarily has to be, but it's just we have to accept that there was speech and the reason for the arrest plausibly. Merely because he was engaged in the protest at the Detroit Woolbreed protest that stemmed from the murder of George Floyd. With Navarro, there's a whole back issue, which doesn't necessarily have to do with speech. It has to do with the like each other. But for Barr, it's just that we just have to accept that. He was implementing adverse action, ticketing him and all the difficulties that come with that. Isn't the reason there's an inference he was involved in speech that he was part of a group? We're going to call it the collective group First Amendment claim. He's also an individual citizen that's being charged with a crime. You get the point I'm making. The inference runs in both directions. You can have the inference, of course he was participating in the protest. Why else was he there, particularly dressed that way? Well, it's a very similar inference to the, of course they can arrest him if the group had been violating orders. But that doesn't mean he was engaged in disorderly conduct or not obeying the police orders. And in fact, there's no evidence that he was. And that the reasonable inferences in the plaintiff's favor as the non-movement indicate that he was not. Why can't we then say in the other direction there's no evidence that the officer saw him speaking? It's not just him being present at the protest doesn't involve necessarily verbal communication. He was law-abiding on the sidewalk. Why are you assuming he's a protester if no one saw that? Well, he testified as much that he was there for that. No, no, no. But the point is the officers have to retaliate on the speech. And what if the point is that they didn't see him speaking? His exercise of his First Amendment rights was to be present and to... and be part of that protest and advocate for the... against the police misconduct and police violence against minorities that had been... that was stemming from the murder of George Floyd. So it wasn't him necessarily just speaking. But his presence there was actually a manifestation of his First Amendment rights. Also, it is true that the good faith extension of the collective knowledge doctrine applies in the Fourth Amendment context. But the trial court found that it does not apply in a First Amendment context. And the reasons for that are because to establish the causation element of a First Amendment retaliation claim, you have to look to the defendant's subjective motivation. And motivation is often very difficult to prove with direct evidence in retaliation cases. And thus, circumstantial evidence is properly looked to as one of the only means of establishing the connection between the defendant's actions and the plaintiff's protected conduct. And if you were to allow the good faith extension that arose in the Fourth Amendment context to apply in a First Amendment context, that would make it extremely difficult to demonstrate that causation. And defendants cite no authority for applying the good faith extension to the collective knowledge doctrine to a First Amendment retaliation claim. And the district court found no reason to expand it where the lack of probable cause is that highly valuable circumstantial evidence of retaliatory animus that is otherwise difficult to establish. The subjective retaliatory animus of Barr in ticketing hall should not be based on the officer's collective psyche, but rather on his own motivations. And as I've indicated and as the trial court found, the motivations can be inferred from his saying, well, I saw other people acting that way. And so therefore, he was at the protest. He must have been doing that as well. And therefore, I'm entitled to ticket him in that manner. Okay. Thank you very much. Thank you. We appreciate your arguments, your briefs for answering our questions. We're always grateful for that. The case will be submitted, and the clerk may adjourn court. Thank you. The Senate will court is now adjourned.